RICHARDSON CORP. v. BARCLAYS AMERICAN/MORTGAGE CORP.

[111 N.C. App. 432 (1993)]

———————————

RICHARDSON CORPORATION v. BARCLAYS AMERICAN/MORTGAGE CORPORATION, A. F. REAL ESTATE HOLDINGS, INC., AND PAUL M. DENNIS, JR., SUBSTITUTE TRUSTEE

No. 9218SC737

(Filed 3 August 1993)

**Mortgages and Deeds of Trust § 22 (NCI4th)— future advances— priority of intervening lien**

Reading together a deed of trust, a loan agreement, and a letter of commitment, defendant was only obligated on the date the deed of trust was executed to make cumulative advances in the amount of $14,950,000; therefore, any monies advanced in excess of that amount were not obligatory as of the date of the deed of trust, and the fact that they may have become obligatory at some later time did not extend to defendant the protection of N.C.G.S. § 45-70(a). Accordingly, because plaintiff gave actual notice to defendant that it had perfected a lien on the property, the future advances made by defendant to the borrower subsequent to the receipt of the notice and in excess of the cumulative amount of $14,950,000 did not take priority over plaintiff's lien.

**Am Jur 2d, Mortgages § 355.**

**Priority between mechanics' liens and advances made under previously executed mortgage. 80 ALR2d 179.**

Appeal by plaintiff from judgment entered 27 April 1992 in Guilford County Superior Court by Judge William H. Freeman. Heard in the Court of Appeals 8 June 1993.

RICHARDSON CORP. v. BARCLAYS AMERICAN/MORTGAGE CORP.

[111 N.C. App. 432 (1993)]

*Hunter, Wharton & Lynch, by John V. Hunter III, and Adams Kleemeier Hagan Hannah & Fouts, by M. Jay DeVaney and Amiel J. Rossabi, for plaintiff-appellant.*

*Smith Helms Mulliss & Moore, by J. Donald Cowan, Jr. and Andrew S. Chamberlin, for defendant-appellees.*

GREENE, Judge.

Richardson Corporation (Richardson) appeals from the judgment entered on 27 April 1992 granting defendants' motion for summary judgment and denying Richardson's cross-motion for summary judgment.

In March, 1986, Richardson and Adams Farm Company (Adams Farm), a North Carolina partnership, agreed that Richardson would loan Adams Farm $1,050,000 to assist in the purchase and development of a tract of land containing approximately 697 acres, to be known as the Adams Farm Development. Additionally, Adams Farm submitted to Barclays American/Mortgage Corporation (Barclays) a loan request to obtain additional funds for the purchase and development of the project. On 10 April 1986, Barclays issued a commitment letter approving "a loan which will provide cumulative advances of $14,950,000, but with no more than $8,000,000 outstanding at any one time" provided Barclays received a "valid first lien" on the 697 acres of land to be purchased by Adams Farm.

On 28 May 1986, consistent with the agreements between the parties, the following instruments were executed: a loan agreement between Barclays and Adams Farm, which incorporated the "terms and provisions" of the commitment letter, wherein Barclays agreed to provide a loan in the amount of $14,950,000; a note, signed by Adams Farm payable to Barclays in the principal sum of $14,950,000; and a deed of trust signed by Adams Farm securing the note of $14,950,000; a note, signed by Adams Farm payable to Richardson in the principal amount of $1,050,000; and a deed of trust signed by Adams Farm securing the note of $1,050,000. The deed of trust to Barclays provided in part:

WHEREAS, and . . [sic] is agreed: that this Deed of Trust is given, wholly or partly, to secure present and future obligations which may be incurred hereunder and *pursuant to the Note and Loan Agreement; that the advances to be made under the Note are obligatory upon Lender up to the face*

*amount of the Note*; that the amount of obligations presently secured hereby is $6,013,890.00, and the maximum amount of present and future obligations to be secured hereby shall not exceed at any one time the sum of $14,950,000.00; and that all future obligations, if any, shall be incurred on or before ten years from the date hereof; . . . [emphasis added].

It was agreed by all the parties that the Barclays deed of trust would be a first lien on the properties and the Barclays deed of trust was recorded first in the register of deeds office. On this same date, 28 May 1986, Richardson delivered to Barclays a letter advising them, pursuant to "the provisions of G.S. 45-70(b)" that Richardson had "advanced a loan" to Adams Farm in the amount of $1,050,000, which was secured by a deed of trust recorded in the Guilford County Register of Deeds Office.

After Barclays made cumulative advances totalling $14,950,000, Barclays agreed, on 28 August 1987, to extend its loan commitment to provide additional advances of $9,000,000. On 12 December 1988, Barclays further agreed to advance an additional $8,000,000 to Adams Farm. The total amount advanced to Adams Farm by Barclays was approximately $28,000,000. Adams Farm defaulted in the repayment of Barclays note, leaving a balance owed of some $8,000,000, and in the repayment of the Richardson note, leaving a balance of $1,419,632.34. Barclays and Richardson, on 1 November 1990, entered into an escrow agreement, wherein it was agreed that Barclays would deposit $1,419,632.34 into an escrow account and that Richardson would release the property from its deed of trust. On 1 May 1991, the property was sold at foreclosure to Barclays for the sum of $6,316,000.

Richardson initiated this action by a verified complaint seeking judgment declaring that the Richardson loan has priority over the advances made by Barclays above $14,950,000 and that it therefore be declared the owner of the funds in escrow. On 8 January 1992, the defendants moved for summary judgment, and Richardson cross-moved for summary judgment on 21 February 1992. The trial court granted defendants' summary judgment motion, thus denying Richardson's claim of priority.

----

The dispositive issue is whether, pursuant to Chapter 45, Article 7 of the North Carolina General Statutes, the advances by

Barclays to Adams Farm above $14,950,000 have priority over Richardson's deed of trust.

As to priority of intervening liens in relation to future advances, N.C.G.S. § 45-70 states:

> (a) Any security instrument which conforms to the requirements of this Article [*see* N.C.G.S. § 45-68 (1991)] and which on its face shows that the making of future advances is obligatory, shall, from the time and date of registration thereof, have the same priority to the extent of all obligatory future advances secured by it, as if all the advances had been made at the time of the executions of the instrument. An advance shall be deemed obligatory if the secured party has bound himself to make it, whether or not a subsequent event of default or other event not within his control has relieved or may relieve him from his obligation.

> (b) Any security instrument . . . which on its face does not show that the making of future advances is obligatory, shall, from the time and date of registration thereof, have the same priority to the extent of all obligations secured by it, as if all the advances had been made at the time of the execution of the instrument, except that when an intervening lienor or encumbrancer gives actual notice as hereinafter provided that an intervening lien or encumbrance has been perfected on the property covered by the security instrument, . . . any future advances made subsequent to the receipt of such notice shall not take priority over such intervening perfected lien or encumbrance. Such notice shall be in writing and shall be given to the secured creditor named in the security instrument . . . .

N.C.G.S. § 45-70(a), (b) (1984), *amended by* 1989 N.C. Sess. Laws, ch. 496, § 3, effective October 1, 1989.[1]

Although Richardson argues otherwise, we assume, for the purposes of this opinion, that the Barclays' deed of trust complies with the requirements of N.C.G.S. § 45-68, that is, it shows (1) that it was given "to secure future obligations which may be in-

---

1. The amendment modifying subsection (a) and repealing subsection (b) was effective 1 October 1989, and applicable only to security instruments executed on or after that date.

curred thereunder;" (2) the "amount of present obligations secured, and the maximum amount . . . which may be secured;" and (3) the "period within which such future obligations may be incurred, which period shall not extend more than 10 years beyond the date of the security instrument." N.C.G.S. § 45-68(1). The only question we address therefore is whether Barclays was obligated, "on [the] face" of the original note and deed of trust to make advances in excess of $14,950,000. If so, Barclays' deed of trust maintained its superiority over the Richardson deed of trust to the extent of all advances made. If not obligatory, then Richardson's deed of trust was senior to the Barclays' deed of trust, to the extent of any advances in excess of the $14,950,000.

The Barclays' deed of trust provided in pertinent part that advances were "obligatory upon Lender up to the face amount of the Note." The deed of trust incorporated the terms of the loan agreement, which incorporated the terms of the commitment letter. The commitment letter provided for advances in the "cumulative" sum of $14,950,000, "with no more than $8,000,000 outstanding at any one time." Reading these documents together, as the documents require, Barclays was only obligated, on 28 May 1986 (the date the deed of trust was executed), to make cumulative advances in the amount of $14,950,000. Therefore, any monies advanced in excess of that amount were not obligatory as of 28 May 1986, and the fact that they may have become obligatory at some later time, does not extend to Barclays the protection of Section 45-70(a). Accordingly, because Richardson gave actual notice to Barclays that it had perfected a lien on the property, the future advances made by Barclays to Adams Farm subsequent to the receipt of the notice and in excess of the cumulative amount of $14,950,000 did "not take priority over" the Richardson loan.

In so holding, we reject Barclays' argument that Section 45-69 requires a different result. We acknowledge the general rule that "if any obligation secured . . . [by a security agreement consistent with N.C.G.S. § 45-68] is paid or is reduced by partial payment, further obligation may be incurred . . . provided the unpaid balance of principal outstanding shall never exceed the maximum amount authorized," and that such obligations "shall be secured to the same extent" as the original obligation. N.C.G.S. § 45-69 (1991). If, however, the "security instrument provides to the contrary," this general rule is not applicable. Id. In this case, the deed of trust, which incorporates the commitment letter, provides to the

IN RE STATE EX REL. EMPLOYMENT SECURITY COMM. v. HOPKINS

[111 N.C. App. 437 (1993)]

contrary. It specifically provides that no obligation shall be incurred in excess of a cumulative total of $14,950,000.

The summary judgment entered for defendants is reversed and this case is remanded for entry of summary judgment for Richardson.

Reversed and remanded.

Judges JOHNSON and WYNN concur.